UNITED STATES, Appellee,

v.

Nelson CRUZ–SANTIAGO,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Edgar ARCE–RAMOS, Defendant,
Appellant.

Nos. 92–1900, 92–1917.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1993.

Decided Dec. 22, 1993.

Rachel Brill with whom Norberto Colon, By Appointment of the Court, was on joint brief for appellants.

Edwin O. Vazquez, Asst. U.S. Atty., with whom Charles E. Fitzwilliam, U.S. Atty., and Jose A. Quiles–Espinosa, Sr. Litigation Counsel, Crim. Div., were on brief for appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

Appellants Arce Ramos and Cruz Santiago, convicted bank robbers, raise one question in respect to their sentencing. They say that the sentencing court should not have counted, as a robbery-related "loss" for sentencing purposes, the value of a car, a Nissan Sentra, that the robbers seized at gunpoint outside the bank and drove from the scene of the crime to a second getaway car. We think the district court was correct to include the value of the car in calculating the loss, and we therefore affirm.

The appellants concede the basic facts. Arce Ramos, along with two other persons, entered a bank, took $6,160, shot the assistant manager, ran outside the bank, saw a Nissan Sentra that happened to be passing by, forced its innocent driver out of the car, and drove off to a rendezvous point. A

private security guard, who had followed the bank robbers, saw them park the Sentra and get into a yellow Volkswagen, where two confederates (including appellant Cruz Santiago) were waiting. All five then drove off in the Volkswagen, in which the police later found, and arrested, them.

The sentencing court noted that the relevant guideline, the robbery guideline, determines a sentence partly on the basis of a monetary loss table, which instructs the court to increase the offense level by "one level" if the loss was more than $10,000 but not more than $50,000. U.S.S.G. § 2B3.1(b)(6)(B). The court added that one level because it added the Sentra's $4,000 value to the $6,160 taken in the robbery, yielding a total "loss" of just over $10,000. The appellants argue that the court ought not to have included the Sentra's value in this calculation; and, they say, the court would have (though it need not have) imposed a lesser sentence had the final offense level been lower by one. Because the court did not say that it would have picked the same sentence from the lower (but overlapping) sentencing range, we assume that the difference in calculation would have made a difference to the sentence. And, we proceed to consider appellants' argument. *See United States v. Ortiz*, 966 F.2d 707, 717–18 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993); *cf. United States v. Concemi*, 957 F.2d 942, 952–53 (1st Cir.1992).

■ The appellants' argument is a simple one. They note that the robbery guideline Commentary tells the court that "[v]aluation of loss is discussed in the Commentary" to the guideline entitled "Larceny, Embezzlement and Other Forms of Theft." They concede that this latter guideline defines "loss" as including "the value of property *taken*." U.S.S.G. § 2B1.1, comment. (n. 2) (emphasis added). And, they concede that they *took* the Sentra. But, in their view, the court must read the word "taken" as embodying a special meaning, derived from the common law definition of "larceny," namely, "taken with intent permanently to deprive." And, they say they did not intend to deprive its owner of his Sentra *permanently*. (After all, they parked it before they got into the yellow Volkswagen.) For this reason, they conclude, the "loss" was $6,160, not $10,160.

We disagree with appellants. For one thing, on their own reasoning, the facts offer sufficient support of the district court's apparently implicit conclusion that the Sentra's taking met most criminal law definitions of "larceny." Although there is some dispute among authorities whether common law larceny requires an intent permanently to deprive an owner of his property, *see* S.Rep. No. 307, 97th Cong., 1st Sess. at 714 (1981), it has long been the case that "if one takes another's property intending to use it recklessly and then abandon it, the obstacles to its safe return are such that the taker possesses the required intent to steal." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.5, at 360–61 (1986).

Some states say that a defendant who is indifferent or reckless in respect to an owner's recovery of property is "willing" to have the owner lose his property permanently, and, for that reason, "the wrongdoer may appropriately be held to entertain specific intent that the deprivation to the owner be permanent." *State v. Gordon*, 321 A.2d 352, 358 (Me.1974); *see also State v. Webb*, 309 N.C. 549, 308 S.E.2d 252, 256–57 (1983) (defendant's actions would leave owner's recovery "to mere chance and thus constitute such 'reckless exposure to loss' that it is consistent only with an intent permanently to deprive the owner of his property" (quoting *State v. Smith*, 268 N.C. 167, 150 S.E.2d 194, 200 (1966)).

The criminal codes in other states define larceny (or theft) to include an "intent to deprive," and then define "deprive" as including disposition of property in a way that makes it unlikely that the owner will recover it. *See, e.g.,* Conn.Gen.Stat. § 53a–118(a)(3); Mont.Code Ann. § 45–2–101(19)(d); N.Y. Penal Law § 155.00[3]; Tex. Penal Code Ann. § 31.01(3)(C); *see also Model Penal Code* § 223.0(1).

Thus, courts often find the requisite "larcenous" intent where the evidence shows no more than the abandonment of property under circumstances that make the owner's re-

covery unlikely. *See, e.g., State v. Piscattano,* 32 Conn.Supp. 649, 352 A.2d 783, 785 (1976) (factfinder may conclude recovery not likely when car left on street with keys in car); *Brown v. State,* 804 S.W.2d 566, 570 (Tex.Ct.App.1991) (jury may find "intent" permanently to deprive where defendant parked and abandoned vehicle in vacant lot with windows down); *see also State v. Ward,* 19 Nev. 297, 10 P. 133 (1886) (factfinder may find larceny when defendant abandoned horses 12 miles from home, though they walked back to their barn).

The robbers here, at the time they first took the Nissan, subjected it to significant, known risks that the owner would not recover it. As the sentencing court pointed out, the robbers might have "had an accident" in a high speed chase, "crashed the car," or the car might have "been riddled by bullets" shot by pursuing police. The robbers abandoned the car, on the street, some distance from the bank. To take a car unlawfully, knowing (and thereby intending) that it be subject to these risks of further destruction and theft would seem to amount to acting with sufficient conscious disregard in respect to the risk of eventual non-recovery that a trier of fact might find traditional (larcenous) theft. *See, e.g., Piscattano,* 352 A.2d at 785.

■ Regardless, the Guidelines do not limit the Commentary's word "taken" to circumstances involving a *"permanent"* deprivation of property. The Commentary relates to an entire guideline, the title of which makes clear its application, not only to larceny, but also to "embezzlement" and to "other forms of theft." Embezzlement need not involve an intent to deprive *permanently. See, e.g., United States v. Anderson,* 850 F.2d 563, 565 (9th Cir.1988) (intent to deprive permanently is not an element of embezzlement); *United States v. Shackleford,* 777 F.2d 1141, 1143 (6th Cir.1985) (same), *cert. denied,* 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986); *United States v. Waronek,* 582 F.2d 1158, 1161 n. 4 (7th Cir.1978) (same). Nor is there a *"permanent* deprivation" requirement found in respect to such "other forms of theft," as "joyriding," which the law of Puerto Rico, like that of several states, criminalizes along with larceny and without distinc-

tion. *See* P.R.Laws Ann. tit. 33, § 4272 (theft statute similarly prohibits permanent and temporary deprivations); Ga.Code Ann. § 16–8–1(1) (same); S.D. Codified Laws Ann. § 22–1–2(12) (same); Wash.Rev.Code § 9A.56.020(1) (same); *cf. Brown v. Ohio,* 432 U.S. 161, 163–64, 97 S.Ct. 2221, 2224–25, 53 L.Ed.2d 187 (1977) (discussing state law that regarded joyriding as a lesser included offense of larceny); *State v. Reeves,* 342 So.2d 605, 608 (La.1977) (same); *Commonwealth v. Giannino,* 371 Mass. 700, 358 N.E.2d 1008, 1010 (1977) (same); *Model Penal Code* art. 223, § 223.9 (discussing unauthorized use of motor vehicles in section on "Theft and Related Offenses"); *see also United States v. Deggs,* 632 F.2d 829, 831 (9th Cir.1980) (discussing 18 U.S.C. § 1707, referred to by the theft guideline, as a "joyriding" statute that requires no intent to deprive permanently); *United States v. Henry,* 447 F.2d 283, 284–85 (3d Cir.1971) (discussing 18 U.S.C. § 661 as a theft statute that requires no intent to deprive permanently); S.Rep. No. 307, 97th Cong., 1st Sess. at 714 (1981).

We recognize that the Guidelines' similar treatment of permanent and temporary takings means that an offender's punishment will reflect the full value of a "taken" car returned to its owner undamaged. But, we have no doubt that the Guidelines intend this result. They specifically provide that "loss is the value of the vehicle even if the vehicle is recovered immediately." The reason is that the Guidelines here are concerned with punishment, not restitution; and, they consequently focus on the fact that the offender's behavior created a significant *risk* of loss—a risk that existed whether or not the property owner eventually suffered harm. *See, e.g., United States v. Brach,* 942 F.2d 141, 143 (2d Cir.1991); *United States v. Cockerham,* 919 F.2d 286, 289 (5th Cir.1990); *United States v. Parker,* 903 F.2d 91, 105 (2d Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). We cannot say the Guidelines are unreasonable in keying punishment to risk of serious loss. And, in this case, both temporary loss and a significant risk of serious (permanent) loss are present.

4

For these reasons, the judgment of the district court is

*Affirmed.*