# United States Court of Appeals
## For the First Circuit

_____

No. 00-1396
No. 00-1405

UNITED STATES

Appellee/Cross-Appellant,

v.

CHRISTOPHER R. WALKER

Defendant, Appellant/Cross-Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

_____

Before

Torruella, Chief Judge,

Lynch and Lipez, Circuit Judges.

_____

Eric E. Menoyo, with whom David J. Van Dyke and Berman & Simmone, P.A. were on brief, for defendant-appellant/cross-appellee.

F. Mark Terison, Senior Litigation Counsel, with whom Jay P. McCloskey, U.S. Attorney, was on brief, for appellee/cross-appellant.

_____

December 19, 2000

_____

**LYNCH, Circuit Judge**.  Christopher Walker embezzled from an employee-benefit fund that never contained much more than $500,000.   Nevertheless, at sentencing the district court calculated the relevant loss under U.S.S.G. § 2B1.1(b) as $933,369.  Walker challenges this seeming paradox.  In addition, Walker appeals the sentencing court's refusal to decrease the base level of his offense for acceptance of responsibility and its refusal to make a downward departure on several suggested bases.   The government cross-appeals, claiming that Walker's sentence should have been enhanced for obstruction of justice. We affirm the district court's sentence on all grounds.

## I.

Walker was part owner of Beacon Motor Company, Inc., an automobile dealership in Bangor, Maine, and he had financial control of its checking accounts during the relevant time period.  Faced with serious cash flow problems, Walker began to "borrow" money from the dealership's profit sharing plan (the "Plan") in 1995.  During the next three years, he made eleven withdrawals from the Plan, totaling $925,000.  An additional shortfall of $8,369 was discovered prior to sentencing.  At various times during the embezzlement, Walker returned money to the Plan, leaving an actual shortfall of $468,663.

After Walker's embezzlement was discovered, he offered to cooperate with prosecutors.   In the course of these discussions, he attributed much of the responsibility for the embezzlement scheme to his partner in the automobile dealership,

James Gallant. The prosecutor advised Walker that he might receive a downward departure for substantial assistance if he provided information against Gallant that led to his prosecution. No such case was ever made. Walker eventually reached a plea agreement with the prosecutor under which he pled guilty to one count of embezzlement under 18 U.S.C. § 664.

The presentence report found, among other things, that (i) despite Walker's insistence to the contrary, Gallant had not participated in the embezzlement scheme; (ii) Walker had not been fully forthright in providing documentation of his crimes; (iii) Walker had fabricated details of his actions at the dealership; (iv) Walker had not accepted full responsibility for his actions; and (v) Walker had misrepresented his finances. The presentence officer did not recommend any adjustments to Walker's base offense level or discretionary downward departures.

The sentencing judge agreed, refusing to reduce the offense level for acceptance of responsibility, and declining to make any discretionary downward departures. In order to set the offense level, the sentencing court then calculated the amount of loss. The judge totaled the amounts of the eleven unlawful withdrawals from the Plan and the missing $8,269 to arrive at a loss amount of $933,369, increasing the offense level by 13. See U.S.S.G. § 2B1.1(b)(1)(N). Two other enhancements not at issue further increased the offense level to 21. The government sought an additional enhancement for obstruction of justice

-4-

under U.S.S.G. § 3C1.1 on the basis of allegedly perjurious testimony by Walker at the sentencing hearing, but the sentencing judge declined to make such a finding. The court sentenced Walker to 46 months in prison, the high end of the 37 to 46 month range provided by the Guidelines given his offense level and criminal history.

## II.

### A.  Calculation of Loss

Walker presents a simple argument: considering the amount of money Walker returned to the plan, his total "theft" was only $468,663, a loss which would enhance his offense level by 11.  See U.S.S.G. § 2B1.1(b)(1)(L).  The court instead calculated the loss by summing all eleven of Walker's unlawful withdrawals, and hence Walker received no credit whatsoever in the loss calculation for returning the money.  This approach resulted in a loss amount of $933,369, and an adjustment in the offense level of 13.  Despite the inherent appeal of Walker's argument, however, the sentencing court followed the proper approach for calculation of loss in cases of embezzlement.

We start with the standard of review.  The government argues that we should review the sentencing court's determination of the loss amount for clear error, since the court made a factual finding as to the amount of loss. Walker does not, however, challenge the factual basis of the sentencing court's loss calculation but rather the method by which the calculation was made.  The appropriate method for calculating

-5-

loss amounts under the Guidelines is a prototypical question of legal interpretation, and we review de novo. See United States v. Carrington, 96 F.3d 1, 6 (1st Cir. 1996) ("This court reviews de novo the district court's interpretation of the loss provisions of the Guidelines. Thereafter, it normally reviews a district court's factual findings only for clear error."); cf. United States v. Phaneuf, 91 F.3d 255, 261 (1st Cir. 1996) (challenges to the factual basis of the district court's loss determination reviewed for clear error).

U.S.S.G. § 2B1.1(b)(1) itself gives no guidance on the appropriate method for calculating loss. The commentary to the Guidelines provides little additional direction. It simply defines "loss" as "the value of property taken, damaged, or destroyed." U.S.S.G. § 2B1.1 cmt. n.2. This commentary suggests that "loss" refers primarily to the value of what was taken, not the harm ultimately suffered by the victim. With this limited guidance, we turn to the crime at issue. Since the crime of embezzlement does not include as an element an intent to permanently deprive the victim of the funds, but rather a temporary deprivation will do, we conclude that the loss calculation for embezzlement properly uses the amount of each deprivation.

Walker's crimes were complete at the time that he made the unlawful withdrawals from the Plan. See United States v. Cruz-Santiago, 12 F.3d 1, 3 (1st Cir. 1993) ("Embezzlement need not involve an intent to deprive permanently."); see also United

States v. Hathcoat, 30 F.3d 913, 916 (7th Cir. 1994) (relevant criminal action in embezzlement is fraudulent appropriation). With each unlawful withdrawal, Walker created a significant risk that the Plan would become unable to meet its obligations, and Walker was guilty of an act of embezzlement regardless of any intended or actual repayments. As each of these unlawful withdrawals reflects a completed act of embezzlement, the sentencing court properly calculated loss by summing the amounts of the eleven withdrawals without regard for any repayments made by Walker at other times. Otherwise, the logic of Walker's argument leads to the untenable conclusion that had Walker managed to repay fully the funds he had embezzled, the proper amount of loss would be zero.

This conclusion is consistent with the interpretation of similar loss provisions by other circuits. In United States v. Brach, 942 F.2d 141 (2d Cir. 1991), the court addressed a similar loss provision in the fraud guideline.[1] Id. at 143. The court concluded that the loss calculation under the fraud guideline should be determined in reference to the loss at the completion of the crime, rendering the defendant's intention to repay and the actual harm ultimately suffered by the victim irrelevant. See id.; see also United States v. Cea, 925 F.2d 56, 57 (2d Cir. 1991) ("There is no suggestion in the commentaries that loss was intended to be limited to the harm

---

[1] The commentary to the fraud guideline cited in Brach, § 2F1.1 cmt. n.7, cross-references the guideline at issue here. See Brach, 942 F.2d at 143.

done by the defendant when, for some reason, the amount taken exceeded the harm suffered by the victim."). Cf. Cruz-Santiago, 12 F.3d at 2-3 (relying on specific example in the commentary to decide loss calculation under the robbery guideline to include the full value of a stolen car despite its return unharmed).

Walker's reliance on the commentary provision that "in certain cases, an offense may involve a series of transactions without a corresponding increase in loss," is misplaced. U.S.S.G. § 2B1.1 cmt. n.2. While certain embezzlement schemes may involve complex transactions that move funds multiple times without changing the risk of loss or adding a new risk of loss, this is not such a case. This provision does not encompass the return and then subsequent re-embezzlement of funds, since each subsequent embezzlement creates a new risk of loss, and hence is properly accounted for through an additive loss calculation.

A defendant's repayment of embezzled funds nonetheless may serve to mitigate a defendant's punishment in other areas of sentencing. Here, Judge Carter calculated a loss of $933,369 as a result of Walker's embezzlement, yet only required restitution of $505,081.82 from Walker. Moreover, as was noted at oral argument, Walker was certainly entitled to seek a downward departure based upon his return of money to the Plan. He did not do so, perhaps because he returned the money only in an attempt to cover up his own wrongdoing. In any event, the district court calculated the loss correctly, and we affirm its decision.

**B. Acceptance of Responsibility**

The sentencing judge found that Walker was not eligible for a reduction in offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). We review this decision with "great deference" because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsbility." U.S.S.G. § 3E1.1 cmt. n.5. Hence we will overturn a sentencing court's decision not to reduce the offense level for acceptance of responsibility only when that decision is clearly erroneous. United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990).

Section 3E1.1(a) requires that the defendant "clearly demonstrate" acceptance of responsibility. The commentary notes that some appropriate considerations under this guideline include (i) whether the defendant truthfully admits the underlying offense conduct and related conduct, see U.S.S.G. § 3E1.1 cmt. n.1(a); (ii) whether the defendant voluntarily surrenders promptly after the commission of the offense, see id. cmt. n.1(d); (iii) whether the defendant provides voluntary assistance in recovering the fruits and instrumentalities of the offense, see id. cmt. n.1(e); and (iv) the timeliness of the manifestation of acceptance, see id. cmt. n.1(h). The district court must also consider the defendant's credibility and demeanor. See Royer, 895 F.2d at 30. The record indicates that the sentencing judge considered each of these factors and found the evidence insufficient to demonstrate clearly Walker's acceptance of responsibility.

The commentary also notes that entry of a guilty plea "combined with truthfully admitting the conduct comprising the offense . . . will constitute significant evidence of acceptance of

responsibility." U.S.S.G. § 3E1.1 cmt. n.3; see Royer, 895 F.2d at 29-30. However, the defendant who offers a guilty plea is not entitled to the adjustment as a matter of right. See U.S.S.G. § 3E1.1 cmt. n.3. Moreover, the benefit of offering a guilty plea may be outweighed by conduct inconsistent with the acceptance of responsibility. See id. The court specifically noted that, despite Walker's guilty plea, he had engaged in conduct inconsistent with acceptance of responsibility.

Because on these facts the court had a plausible basis to conclude that Walker had not completely accepted responsibility for his criminal conduct, the sentencing court's refusal to reduce his offense level was not clear error. See Royer, 895 F.2d at 30.

## C. Discretionary Downward Departures

Walker asserts that he was entitled to a downward departure under one of four theories: (i) his extraordinary rehabilitation; (ii) his substantial assistance to the government; (iii) the fact that his wrong-doing was a single, aberrant incident in an otherwise law-abiding life; or (iv) because he did not profit from the embezzlement. If the sentencing court refused to grant such a departure as an exercise of its discretion -- that is, if it considered the departure and refused -- we have no appellate jurisdiction. See United States v. Algarín-DeJesús, 211 F.3d 153, 157 (1st Cir. 2000). The record indicates that the court considered a downward departure and found that no factors were present that would support such a departure. We cannot disturb this ruling.

## D. Obstruction of Justice

The government appeals from the district court's decision not

to give a sentence enhancement for obstruction of justice based on allegedly false statements made by Walker during his testimony at sentencing. At sentencing, Walker testified that he did not accept any money from his friend John Arsenault, and that any money he returned to the dealership was his own. The government then produced Arsenault as a witness, and Arsenault rebutted the testimony. Contending on the basis of this rebuttal that Walker had perjured himself at the sentencing, the Government sought a two-point enhancement of Walker's offense level under U.S.S.G. § 3C1.1 for obstruction of justice. Walker, of course, had no specific notice the government would seek this enhancement when he took the stand, although he had general notice of the Guidelines. Significantly, Arsenault had made a prior statement to Walker's defense counsel which supported Walker's testimony and was materially at odds with Arsenault's later rebuttal testimony. Thus, when Walker took the stand, he understood that Arsenault, if he testified, would do so consistently with Walker's own testimony. Only the government knew that was not so. The government also knew that Arsenault had given a different version of the facts to defense counsel, but the government did not alert Walker's counsel to Arsenault's change in position.

U.S.S.G. § 3C1.1 increases the offense level by two points if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during . . . sentencing or the instant offense of conviction." Such obstructing conduct includes "committing . . . perjury." Id. cmt. n.4(b). When a court finds that the defendant has perjured himself, the Guidelines

mandate the enhancement.  See United States v. Dunnigan, 507 U.S. 87, 98 (1993).

The sentencing court declined to decide the perjury question or reach the question of the enhancement because the Government had failed to give notice to Walker of Arsenault's rebuttal testimony, the basis for the claimed enhancement.  The sentencing court stated that it would not impose the enhancement "when the government could have, with a single sentence, made it clear to him that, if he took the stand and testified falsely, that there was rebuttal testimony available which would lay a predicate for the imposition of an enhancement for obstruction of justice."

A district court must give the parties reasonable notice before making either an upward or downward departure from the Guideline's sentencing range.  See Burns v. United States, 501 U.S. 129 (1991) (reviewing sua sponte departure by the district court).  The government relies on the reading of Burns given by this court in United States v. Canada, 960 F.2d 263 (1st Cir. 1992).  This court read Burns to require special notice only for departures from the Guidelines sentencing range rather than for all Guidelines adjustments, reasoning that the delineation of adjustments in Sentencing Guidelines themselves provides notice to defendants of possible grounds for adjustment, at least where the facts relevant to the adjustment are known to the defendant.  Id. at 266-67.  Thus in Canada we did not require prior notice from the court for an enhancement based upon the defendant's supervisory role.  Id. at 268.  See also United States v. Willis, 997 F.2d 407 (8th Cir. 1993) (not requiring trial judge to provide prior

-12-

notice before imposing enhancement for obstruction of justice).

This case is not controlled directly by either <u>Burns</u> or <u>Canada</u>, but both have policy underpinnings which support the trial judge's decision here.  Both were concerned with adequate notice to defendants of variations from Guideline ranges, <u>Burns</u> with departures and <u>Canada</u> with enhancements and adjustments.  Both are premised on defendant's having adequate notice of the facts and the law.

<u>Canada</u> was a very different situation than this.  In <u>Canada</u> the court imposed a three-point enhancement for the role in the offense based on the trial testimony that Canada was a manager.  Neither the presentence report nor the government had recommended such an enhancement.  The question was whether the trial judge was precluded from considering an enhancement.  <u>Canada</u> held that the court was not so precluded because the Guidelines provided notice.  <u>Canada</u> also said that the facts suggested that Canada "had plenty of notice" that his role could be at issue.  <u>Canada</u>, 960 F.2d at 267 n. 4.  <u>Canada</u> thus concerned a constraint on the ability of the court to consider an enhancement when there was no prior recommendation for such an enhancement.  Significantly, <u>Canada</u> suggests there might be limits on the court notwithstanding, if it were not true that "the facts relevant to the adjustment are already known to the defendant."  <u>Id.</u> at 266.

By contrast, in this case the government rather than the court raised the possible sentencing enhancement, and here the court declined to consider the requested enhancement because it felt the government had not played fair under the rules.  That is a very different issue.  The government now argues that the court was

-13-

required, against its sense of fairness and the government's own articulation of the rules, to entertain the enhancement.

The question here is not the legal point (of whether the law compels notice) addressed by the dissent but rather the factual question of whether notice was possible on the particular facts of this case. The district court reasonably understood the question was not one of legal obligation to give notice of its sentencing positions to the defendant, but of whether on the facts of this case, the government had sufficient knowledge to trigger an obligation.[2] On appeal, the government does not make the argument against a legal obligation the dissent makes. Rather, the government argues that it was in no position to give notice because it could not, in advance, know what Walker would say, or that it would seek an obstruction enhancement. The district court, familiar with the case, rejected that contention as a factual matter, and instead determined that "on the circumstances of this case" the situation permitted the government to give Walker adequate notice. The government, after all, on learning that Walker would testify, had Arsenault ready and available as a rebuttal. There is adequate support for the trial court's factual conclusion, and hence no basis for finding its ruling to be in clear error.

---

[2] The government acknowledged at the sentencing hearing that it was required, where possible, to give notice of its substantial sentencing positions to defendants. The government explicitly agreed to the court's statement that "if the[ ] basis for the two-point increase for obstruction is known to the government before the time of the sentencing hearing, [ ] it has an obligation to come forward and make that claim so that the defendant can have an opportunity to resist it."

Where the defendant perjures himself or suborns perjury at the sentencing hearing, circumstances may not permit notice to the defendant that the adjustment for obstruction of justice will be sought. The government may be totally unaware in advance of the content of that testimony, so as to render notions of notice inapplicable, even where the government is prepared to rebut potential false statements. See, e.g. United States v. Knight, 76 F.3d 86, 88-89 (5th Cir. 1996) (recognizing that "under certain circumstances providing notice will be impossible, such as when a defendant obstructs justice by lying at a sentencing hearing in an attempt to induce leniency"). However, this is not that case.

What renders this case unique is that the government was aware (1) that its rebuttal witness, Arsenault, had provided a materially different statement to defense counsel, indeed one that corroborated Walker's testimony; and (2) that unlike in Canada, here the defendant did not know all of the facts relevant to the potential enhancement. Cf. Canada, 960 F.2d at 266. The defendant did not know that Arsenault would disagree with him; he thought that Arsenault would support his testimony. Only the government knew the rebuttal witness's statement would be to the contrary, and it decided to withhold that information. Indeed, it may be that Walker's testimony was not in fact false; then, advance knowledge of Arsenault's shift in position would have been essential to allowing the defense to meet effectively the government's evidence in the sentencing hearing. In light of these particular circumstances and the government's acknowledgment that notice, if possible, was required, we cannot say that the district

-15-

court abused its discretion in declining to reach the question of enhancement for obstruction of justice.

District courts have an independent duty to ensure the fairness of criminal trials. United States v. Bosch, 584 F.2d 1113, 1124 (1st Cir. 1978). In order to effectively fulfill this duty, district courts must have considerable latitude to make discretionary judgments in governing the trial process, relying on immersion in the factual particulars of the case to render appropriate judgments. These judgments, such as in evidentiary rulings, often rest in the complexities of the particular case, and therefore appellate courts review them only for abuse of discretion. See, e.g. United States v. Lachman, 48 F.3d 586, 590-91 (1st Cir. 1995) (discussing need for discretion in evidentiary rulings). Unfair surprise in witness testimony is one instance where the judicious management of the trial process by the trial judge plays a critical role. Cf. Licciardi v. TIG Ins. Group, 140 F.3d 357 (1st Cir. 1998) (rejecting trial court's refusal to exclude expert witness testimony where testimony was directly contradictory to expert's prior report). In this case, the district court judge declined to reach the question of the obstruction enhancement because of the particular circumstances under which it arose.

Here, not only was the government fully anticipating the scenario that played out at the sentencing hearing, it was aware that the defense counsel was relying on an admittedly false statement by Arsenault in presenting Walker's testimony. While as a general matter the government is not required to disclose the names of witnesses who

-16-

will testify unfavorably to the defendant, nor to disclose the content of their testimony, see Weatherford v. Bursey, 429 U.S. 545, 559-60 (1977), under these particular circumstances, we will not reverse the trial court's determination that the government should have given Walker notice of the rebuttal testimony they possessed. These particular facts present precisely the sort of circumstance where the discretionary judgment of the trial judge is essential to preserving the fairness of the judicial process, and we would not undertake to disturb that judgment absent an abuse of discretion. As the district court did not abuse its discretion in declining to reach the question of obstruction of justice here, in light of the circumstances of this case, we affirm the district court's sentence at the current offense level.

### III.

We affirm the district court's sentencing decision in all respects.

Dissent follows.

**TORRUELLA, <u>Chief Judge</u> (Dissenting in part).**  Although I agree with the majority on the bulk of the opinion, I am troubled by their apparent willingness to open the door to perjured testimony during sentencing.  I would find that the district court erred in not entertaining the possibility that Walker committed perjury during the sentencing hearing.

The majority premises its holding on the "independent duty" of the district court "to ensure the fairness of criminal trials." <u>United States</u> v. <u>Bosch</u>, 584 F.2d 1113, 1124 (1st Cir. 1978).  Thus, according to the majority, the district court "declined to consider the request enhancement because it felt the Government had not played fair," and that to find otherwise would require the district court to rule against its sense of fairness.  The majority thus considered whether the district court abused its discretion in making such a ruling, and concluded that it did not.

I would first contest this standard of review.  The district court did not make its ruling based on an innate conception of fairness, but rather upon "the belief that <u>the law requires</u> that there be adequate notice given, where the circumstances permit, to a defendant to meet any substantial portion of the government['s case] which may yield a substantially adverse result to him in the sentencing process" (emphasis added).  In fact, the district court expressly feared "that the Court of Appeals would not countenance the imposition of the enhancement" without such notice, a fear ironically realized only because the majority mistakenly understands the district court as exercising discretion.  The real issue here is whether such notice <u>was</u>

-18-

legally required.  As this is a question of law, we review the district court's decision de novo.  See United States v. Luna-Díaz, 222 F.3d 1, 2 (1st Cir. 2000).[1]

Burns v. United States, 501 U.S. 129 (1991), held that a district court must give the parties reasonable notice before making either an upward or downward departure.  Id. at 138-39.  However, in United States v. Canada, 960 F.2d 263 (1st Cir. 1992), we read Burns as not requiring special notice where "a court decides that an upward adjustment is warranted based on offense or offender characteristics delineated within the Sentencing Guidelines themselves, at least where the facts relevant to the adjustment are already known to the defendant."  Id. at 266.  Adjustments based on characteristics outlined in the Guidelines differ from sua sponte departures because the defendant can anticipate the possibility of a Guideline-related enhancement; "the [G]uidelines themselves provide notice to the defendant."  Id. at 267.  Thus in Canada we did not require notice of an enhancement based on the defendant's supervisory role.  Id. at 268. Similarly, in United States v. Willis, 997 F.2d 407 (8th Cir. 1993), the Eighth Circuit did not require prior notice to impose an enhancement for obstruction.  Id. at 417.

---

[1]     Even were we to review this for abuse of discretion, I would note that the district court lacks any discretion not to enhance a defendant's sentence when he commits perjury.  See United States v. Dunnigan, 507 U.S. 87, 98 (1993).  As a result, the district court's refusal to entertain the enhancement in the absence of affirmative Government misconduct or actual unfairness to Walker would, in my mind, constitute an abuse of discretion.

This case differs slightly from Canada and Willis in that Walker does not claim that he lacked notice of the obstruction section of the Guidelines, but that he lacked notice of Arsenault's unfavorable testimony. I am not convinced that this distinction saves Walker. Except in the limited fashion provided by Fed. R. Crim. P. 16(a)(1)(E) (providing for disclosure of expert witness testimony), the Government is in no way required to inform a defendant of the witnesses it intends to use against him. See Fed. R. Crim. P. 16(a)(2) ("Nor does the rule authorize the discovery or inspection of statements made by government witnesses. . . ."); Weatherford v. Bursey, 429 U.S. 545, 559 (A defendant has "no general constitutional right to discovery."). These rules have equal force in sentencing hearings, see Fed. R. Crim. P. 1, and I am unaware of any exception in this respect, statutory or otherwise. The majority not only creates such an exception, but goes further in placing a burden on the Government of forecasting that a defendant will take the stand and perjure himself, as well as informing him or her that it has information to contradict the testimony in question.

The majority suggests that the Government has essentially waived its claim here with the admission that it "has an obligation to come forward" if "the basis for the . . . obstruction [enhancement] is known before sentencing." I understand this admission as agreeing that if Walker had committed perjury during trial or pre-sentencing, the Government would have to provide notice prior to seeking an enhancement. Here, however, the Government only anticipated that Walker would commit perjury; they can hardly be required to provide

notice that they will seek an enhancement on facts that might not occur (such as where Walker chose to tell the truth or to not testify at all).[2]

In the present case, the Sentencing Guidelines put Walker on notice that perjury during the sentencing hearing could lead to an obstruction enhancement. The fact that Walker's ignorance as to the content of Arsenault's testimony may have "lulled [him] into a false sense of security," and encouraged him to commit perjury, is irrelevant. Cf. Weatherford, 429 U.S. at 559-60 (although defendant had been lulled into false security by lack of notice of unfavorable testimony, because he had no constitutional right to plea-bargain, he could not complain that his lack of notice had encouraged him not to make a deal). Because there is no constitutional right to commit perjury, Nix v. Whiteside, 425 U.S. 157, 173 (1986), I cannot conclude that Walker should have felt entitled to perjure himself simply because he was unaware that his testimony could, and would, be refuted. As the Fifth Circuit noted in United States v. Knight, "under certain circumstances providing notice will be impossible, such as when a defendant obstructs justice by lying at a sentencing hearing in an attempt to induce leniency." 76 F.3d 86, 88-89 (5th Cir. 1996). Such are the facts here, and, although giving notice of Arsenault's

---

[2]    I have no quarrel with the majority's claim that "notice was possible on the particular facts of this case." My disagreement is with the relevance of this fact, given that (i) the district court based its conclusion on a finding of law, rather than one of fact; (ii) I find no waiver of the Government's argument; and (iii) the district court's discretion, to the extent it was exercised, is severely limited in the context of perjured testimony.

testimony to Walker was not impossible, it was unnecessary given Walker's notice of the punishment for perjury under the Sentencing Guidelines.

The majority seeks to distinguish Canada by suggesting that Walker somehow lacked knowledge of "all of the facts relevant to the potential enhancement."  It is true that Walker did not know Arsenault would testify against him, and in fact believed that Arsenault would corroborate his story.  However, the only "fact" relevant to the enhancement, in the Canada sense, is whether Walker knew that his testimony was false.  In other words, if Walker knowingly lied under oath, he committed perjury, which must be punished by an enhanced sentence under Dunnigan.  Whether the perjury is discovered or not, whether the defendant is aware that it may be discovered, or even whether the defendant is misled into believing that it will not be discovered (as may be the case here) is entirely irrelevant to the basis for the enhancement, which was the concern in Canada.[3]

_____

[3]    It is of course possible that because Walker thought Arsenault would agree with his testimony, he came to believe the perjured testimony himself.  This scenario, however, would not change the fairness of the sentencing hearing, but would merely mean that Walker lied unconsciously, or unknowingly.  By remanding to the sentencing court for a finding of perjury (or no perjury) we would leave the court open to make such a determination.

The majority makes a good point in noting that defense counsel may have relied on an admittedly false statement by Arsenault in presenting Walker's testimony.  First, I note that the district court did not view such a misrepresentation to the defense as actionable, commenting that "as regrettable as it may be, lying to a lawyer is not a new offense."  Second, although Arsenault's misrepresentation to the defense might shield the attorney from a charge of suborning perjury, it should not immunize Walker from his decision to commit perjury.  I might feel

-22-

Perjury is serious business, and is accordingly a federal crime punishable by up to five years in prison, 18 U.S.C. § 1621, or by a two-level enhancement in sentencing, U.S.S.G. § 3C1.1 cmt. n.4(b). Unlike the majority, I am unwilling to countenance it in this case, and I feel that the district court only did so in error.

Although the sentencing judge suggested that a finding of perjury would be forthcoming, he did not make an explicit finding to that effect. "The proper resolution, in these circumstances, is to vacate the sentence and remand to the district court 'to make findings to support all the elements of a perjury violation,' or to articulate clearly the elements it believes not to have been satisfied." United States v. Tracy, 989 F.2d 1279, 1290 (1st Cir. 1993) (quoting Dunnigan, 507 U.S. at 98). Accordingly, I would remand for further findings on this issue.

---

differently if the Government had in some way coerced Walker into testifying on his own behalf, or coerced counsel into calling Walker. On these facts, however, no such coercion occurred.