UNITED STATES of America,
Appellee,

v.

Chad AUSTIN, Defendant, Appellant.

No. 99–2302.

United States Court of Appeals,
First Circuit.

Heard Aug. 4, 2000.

Decided Jan. 3, 2001.

David H. Bownes for appellant.

Donald Feith, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

Before TORRUELLA, Chief Judge, WALLACE,* Senior Circuit Judge, and LIPEZ, Circuit Judge.

WALLACE, Senior Circuit Judge.

Austin appeals from his sentence, imposed following his conviction for bank robbery in violation of 18 U.S.C. § 2113(a) and (d), use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c), possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1), interstate transportation of stolen property in violation of 18 U.S.C. § 2314, and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. He raises two issues. First, he contends that the district court erred at sentencing by enhancing his base offense level by three levels pursuant to U.S.S.G. § 3A1.2(b) (official victims) and by two levels pursuant to U.S.S.G. § 3C1.2 (reckless endangerment). Austin argues that the conduct underlying the enhancements formed the basis of a term of imprisonment imposed by a Massachusetts state court for offenses related to the federal violations. Second, Austin contends that the district court erred at sentencing by aggregating Counts One, Four, and Five, and by aggregating the value of the money taken in the bank robbery and the value of the stolen vehicle transported interstate, which resulted in a one level enhancement to his base offense level pursuant to U.S.S.G. § 2B3.1(b)(7). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2). We affirm in part, vacate in part, and remand for resentencing.

I

In the early morning hours of February 11, 1998, a Volkswagen Jetta (Jetta) was reported stolen in Concord, New Hampshire. [PSR 3] Later that same morning, Austin entered a bank in Portsmouth, New Hampshire, armed with a Glock 9–millimeter handgun (Glock) and wearing a black ski mask. Pointing the gun at three female bank tellers, he directed them to fill two pillowcases with "50s and 100s." [PSR 3] The total amount placed in the pillowcases was nine thousand twenty-eight dollars ($9,028.00). [PSR 3] Retrieving the money-stuffed pillowcases, Austin fled the bank and sped away in the Jetta. [PSR 4]

Within minutes, Deputy Chief Currier of the Seabrook, New Hampshire Police Department began pursuit of Austin in Seabrook, following him south and ending in the Commonwealth of Massachusetts. The chase reached speeds of 115 to 118 miles per hour on Interstate 95 and 80 miles per hour on side roads. [Red 7] During the chase, Austin pointed the Glock at Currier and fired a single round. [PSR 4] Currier abandoned pursuit in Newburyport, Massachusetts.

Massachusetts police officers then pursued Austin through a number of Massachusetts towns and cities. During the pursuit, Austin fired at uniformed police

---

* Of the Ninth Circuit, sitting by designation.

officers from the Massachusetts State Police, New Ipswich Police, and Essex Police. [PSR 4] Austin's ride came to an end when he crashed the Jetta in Salem, Massachusetts.

His criminal exploits continued as he fled from the car, pillowcases and Glock in hand, with police officers fast behind on foot. Shots were exchanged as Salem, Massachusetts, police officers chased Austin along streets and through neighborhood yards. [PSR 4]

In an attempt to elude the police and avoid capture, Austin shot through the glass door of a Salem residence, entered, and held its occupants, Paul Hardy and his twin four-year-old sons, hostage for several hours in a protracted stand-off with the police. Approximately 3:30 p.m., Austin released the boys. Shortly thereafter, Hardy jumped Austin and a struggle ensued, during which two shots were fired from the Glock. [PSR 4] The Massachusetts State Police STOP team then entered the residence and subdued Austin with a shot to the leg, putting an end to the daylong ordeal. Austin was arrested and taken to a nearby hospital, and all of the money stolen, the Glock, and the Jetta were retrieved.

Austin was prosecuted in the Essex County Superior Court in the Commonwealth of Massachusetts on charges stemming from some of the events of February 11, 1998. He was convicted of three counts of armed home invasion; three counts of kidnaping; two counts of assault with a deadly weapon; one count of carrying an unlicensed weapon; and seven counts of assault against a police officer. On November 4, 1998, the court sentenced Austin to a 30- to 40–year prison term.

On the same day that the Commonwealth of Massachusetts sentenced Austin, a federal grand jury in the District of New Hampshire indicted him for bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Count One), use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c) (Count Two), possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) (Count Three), interstate transportation of stolen property in violation of 18 U.S.C. § 2314 (Count Four), and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312 (Count Five). On May 21, 1999, he was convicted on all counts after a one-week trial.

Austin's presentence report (Report) recommended an adjusted offense level of 32 for Count One and an adjusted offense level of 26 for Count Three. The Report grouped together Counts Four and Five pursuant to U.S.S.G. § 3D1.2(d) and recommended a combined adjusted offense level of 11. The Report then grouped this subgroup with Count One pursuant to U.S.S.G. § 3D1.2(c), and grouped Count Three with Count One pursuant to U.S.S.G. § 3D1.2(c). Pursuant to U.S.S.G. § 3D1.3(a), the Report recommended a combined offense level of 32, determined by the highest offense level of the counts in the group, which was Count One. Austin's criminal history category was VI. His total offense level and criminal history category together resulted in a sentencing range of 210 to 262 months. U.S.S.G. § 5A. In addition, pursuant to U.S.S.G. § 2K2.4, Count Two called for a mandatory 60–month consecutive prison term.

At the time of Austin's federal sentencing, he was serving a term of imprisonment imposed by the Commonwealth of Massachusetts for the related state convictions. The Report stated that, because of this, U.S.S.G. § 5G1.3 was implicated and concluded that, pursuant to provisions (b) or (c) of section 5G1.3, Austin's sentence could be imposed to run concurrently with, partially concurrently with, or consecutively to the prior undischarged term of state imprisonment, depending on the circumstances.

Austin argued for a fully concurrent sentence pursuant to U.S.S.G. § 5G1.3(b), with the exception of the 60–month mandatory consecutive sentence (Count Two). He

contended that because the recommended federal sentence fully took into account conduct that formed the basis of his Massachusetts sentence, section 5G1.3(b) required that his federal sentence run concurrently with his undischarged state term. In addition, Austin argued that the Report's grouping of Counts Four and Five with Count One was improper under section 3D1.2 and resulted in an improper one-level enhancement under Count One.

The government argued for a wholly consecutive sentence pursuant to U.S.S.G. § 5G1.3(c). The prosecution acknowledged that two two-level enhancements included in the Report's total offense level of 32 fully took into account conduct for which Austin was sentenced in Massachusetts. Thus, if those two enhancements were eliminated, the government contended, Austin's sentence could be wholly consecutive.

The district court then applied a total offense level of 28, rather than the Report's recommended 32, with a criminal history category of VI, which resulted in a sentencing range of 140 to 175 months.[1] Applying U.S.S.G. § 5G1.3(c), the district court sentenced Austin to 175 months on Count One, 115 of which were to run concurrently to the Massachusetts sentence and 60 of which were to run consecutively to that sentence. In addition, the court sentenced him to a 60 month term for Count Two, which was consecutive to all other sentences.

Appellate review of a district court's interpretation and application of the Sentencing Guidelines (Guidelines) is de novo. *United States v. Collazo–Aponte,* 216 F.3d 163, 200 (1st. Cir.2000). We review the district court's factual determinations for clear error, giving "due deference to the district court's application of the guidelines to the facts." *Id., quoting United States v. Cali,* 87 F.3d 571, 575 (1st Cir.1996).

## II

On appeal, Austin contends that the district court erred in calculating his total offense level under U.S.S.G. § 2B3.1 (Count One) by including two enhancements for conduct for which he was previously held accountable by the Massachusetts court at sentencing. He argues that conduct relating to Officer Currier that occurred in New Hampshire, which was the basis for a three-level enhancement for "official victims" pursuant to U.S.S.G. § 3A1.2(b) and a two-level enhancement for "reckless endangerment" pursuant to U.S.S.G. § 3C1.2, was taken into account by the Massachusetts court in imposing his term of imprisonment. Consequently, he contends that his total offense level for Count One should be adjusted five levels downward, thereby reducing the appropriate sentencing range from which the district court could structure his partially concurrent and partially consecutive sentence pursuant to U.S.S.G. § 5G1.3(c). To answer this argument, we must identify the distinction between the calculation of an offense level under the Guidelines and the application of U.S.S.G. § 5G1.3 after a total offense level has been reached.

The Guidelines prescribe a range of months appropriate for each federal offender's sentence. The recommended range takes into account the "offense level" for the offense being punished (the "instant offense") and the defendant's "criminal history category." U.S.S.G. § 5A. The "offense level" consists of a "base offense level" corresponding to the crime for which the defendant has been convict-

---

1. The district court erred in deducting two enhancements (two levels each) based on Austin's Massachusetts conduct, thus reducing his total offense level from 32 to 28. The court should have instead factored all relevant conduct into the total offense level, and then dealt with the question of whether and how much to reduce Austin's sentence based on the time he was serving in Massachusetts under U.S.S.G. § 5G1.3, which provides for concurrent and consecutive sentencing. However, the government did not raise this issue on appeal.

ed, as modified by mandatory "adjustments" which take into account certain aggravating or mitigating factors. In determining the applicable offense level, district courts must consider all conduct that is "relevant" pursuant to U.S.S.G. § 1B1.3. This holds true even when "relevant" conduct served as the basis for a prior prosecution and sentence. We recently held that "it is well-established that a defendant's sentence may be enhanced pursuant to the sentencing guidelines for conduct underlying a prior prosecution, conviction, and punishment." *United States v. Hughes*, 211 F.3d 676, 690 (1st Cir.2000). The Guidelines, we held, "specifically contemplate multiple prosecutions for different offenses based on the same conduct." *Id.*

After calculating the total offense level, section 5G1.3 of the Guidelines addresses cases in which the defendant, at sentencing, is already serving an undischarged term of imprisonment. To prevent duplicative punishment, subsection 5G1.3(b) requires that when the undischarged term "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense," the new sentence must run concurrently with the undischarged term. U.S.S.G. § 5G1.3(b). Where the prior offenses have not been "fully taken into account" in determining the offense level for the instant offense, however, subsection 5G1.3(c) provides that the new sentence "may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term ... to achieve a reasonable punishment for the instant offense." *Id.* § 5G1.3(c).

■ Applying this analysis to Austin's argument demonstrates why he is mistaken. Austin's contention that his total offense level for Count One was miscalculated is based on a false premise: he mistakenly imports the principle behind section 5G1.3—the prevention of duplicative sentencing for particular conduct—into the offense level calculation process, which precedes it. This argument is one

step ahead of itself. Only after a defendant's total offense level is tallied may a court concern itself with section 5G1.3 and the prospect of duplicative punishment. Thus, Austin's contention that he is being punished twice for the same conduct is wrong. As stated earlier, a defendant's base offense level may be enhanced for conduct underlying a prior prosecution and sentence. This is true "even where ... the defendant is subject to 'separate prosecutions involving the same or overlapping'" conduct. *Hughes*, 211 F.3d at 690, *quoting Witte v. United States*, 515 U.S. 389, 404, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

Austin does not dispute the district court's factual finding that the conduct underlying the enhancements was "relevant" conduct pursuant to U.S.S.G. § 1B1.3. The events of February 11, 1998, which began in New Hampshire and ended in Massachusetts, were part of a single course of criminal conduct: a bank robbery followed by attempts to evade detection and responsibility. The "official victim" and "reckless endangerment" enhancements were based on the New Hampshire portion of the high-speed chase with Officer Currier. Therefore, as they were based on "relevant" conduct pursuant to U.S.S.G. § 1B1.3, the contested enhancements to Count One not only were appropriate, but necessarily were taken into account in the determination of Austins offense level. U.S.S.G. § 1B1.3.

### III

This leads us to our analysis of the proper thrust of Austin's argument. Austin contends that the enhancements run afoul of U.S.S.G. § 5G1.3. Section 5G1.3 was

> designed "to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." Where a defendant's related crimes "are not prosecuted in the same proceeding ... § 5G1.3 ... attempts to achieve some coordination of sentences

with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences ... been imposed at the same time (i.e., had all the offenses been prosecuted in a single proceeding)."

*United States v. Caraballo,* 200 F.3d 20, 27 (1st Cir.1999), *quoting Witte,* 515 U.S. at 404–05, 115 S.Ct. 2199, 132 L.Ed.2d 351. The central purpose of section 5G1.3, in short, is to prevent duplicative punishment.

■ Austin contends that, although he was convicted in Massachusetts of *state* offenses committed on February 11, 1998, at sentencing the state judge held him accountable for conduct that occurred both in Massachusetts *and* New Hampshire—specifically, the conduct that formed the basis of the contested federal enhancements. Thus, he contends that, taken together, the sentences imposed by the Massachusetts court and the district court punish some conduct twice, which is precisely what section 5G1.3 was designed to prevent.

In order for the risk of duplicative punishment even to present itself to the district court, Austin must have been punished once already for conduct fully taken into account in the determination of the offense level for the instant offense. That is, the New Hampshire conduct, fully taken into account in his sentence for the instant offense, must also have formed the basis of Austin's Massachusetts sentence. We now turn to whether Austin demonstrated that it did.

Austin contends that comments made by the Massachusetts judge at sentencing clearly indicate that she did consider New Hampshire conduct underlying the disputed enhancements. After stating that she was "not factoring in any enhancement of any kind whatsoever for the bank robbery that was alleged in New Hampshire," the sentencing judge went on to state:

What strikes me during this case or what struck me rather, was just the incredible dangers that so many people were exposed to during this whole nightmarish experience and it is just an absolute miracle, as far as I'm concerned that no one was killed. It could have been the Hardys, it could have been any number of police officers....

.        .        .        .        .

In crafting a sentence I've also spent a lot of time thinking of the victims. Obviously, I see it as two sets of victims in this case. There are the victims that were involved in the high-speed chase and then the victims at the Hardy house. And I think any sentence has to address ... all the victims, because ... there were a lot of other victims out there, too. And the police officers were equally put in harms way.

[Blue Addendum 10–12] Austin argues that these comments are compelling in their clear and explicit reference to conduct occurring in New Hampshire relating to Officer Currier. We do not read them that way: they are oblique and ambiguous at best. Whether the judge is punishing only conduct occurring in Massachusetts, or conduct occurring both in Massachusetts and New Hampshire, is unclear from her remarks.

■ Because the Massachusetts "sentencing judge may not undertake to punish the defendant for any conduct other than that for which the defendant stands convicted in the particular case,"[2] *Commonwealth v. LeBlanc,* 370 Mass. 217, 346 N.E.2d 874, 877 (1976), we presume that, absent explicit language to the contrary, the sentencing judge did not punish Austin for the New Hampshire conduct relating to Officer Currier. When the judge imposed her sentence, she was of course aware of the entire events that occurred on February 11, 1998. Precisely what

---

**2.** Of course, sentencing judges have considerable discretion and may take into account a wide range of relevant conduct in fashioning

a sentence within the statutory range. *See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

passed through the judge's mind at sentencing is purely speculative, however, and, absent clear language to the contrary, we have no reason to believe that the judge undertook to impose a penalty for the New Hampshire offenses.

As explained earlier, the risk of duplicative punishment arises only after defendant's total offense level is tallied and the district court applies section 5G1.3(c) to fashion a "reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). In this case, there was no risk of duplicative punishment because there was no potential for Austin to receive a second sentence for conduct that was considered in a prior proceeding. Therefore, we hold that the district court did not err in applying U.S.S.G. § 5G1.3(c).

### IV

Austin also contends on appeal that the district court erred when it aggregated the value of the money taken from the bank and the value of the stolen car transported interstate in calculating the total robbery-related "loss" pursuant to U.S.S.G. § 2B3.1(b)(7), the robbery guideline. Further, he contends that the district court erred in grouping the robbery count (Count One) with the interstate transportation of stolen property counts (Counts Four and Five) pursuant to U.S.S.G. § 3D1.2(c). He asserts that this error, when coupled with the first, resulted in an erroneous one-level enhancement in his offense level because the court applied U.S.S.G. § 3D1.3 to determine the offense level for his multiple counts rather than U.S.S.G. § 3D1.4.

### A.

Section 2B3.1 determines a sentence partly on the basis of a monetary loss table, which instructs the court to increase the offense level by "one level" if the "loss" was more than $10,000 but not more than $50,000. U.S.S.G. § 2B3.1(b)(7). The robbery guideline Commentary informs the court that "[v]aluation of loss is discussed in the Commentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft)." U.S.S.G. § 2B3.1 application note 3. The latter guideline defines "loss" as including the "value of the property taken." U.S.S.G. § 2B1.1 application note 2. The district court proceeded to add that one level after aggregating the Jettas $2,000 value and the $9,028 taken in the robbery, yielding a total "loss" of over $10,000.

In support of its contention that the district court was correct to count the value of the Jetta as a robbery-related loss pursuant to U.S.S.G. § 2B3.1(b)(7), the government exclusively relies on our decision in *United States v. Cruz–Santiago*, 12 F.3d 1 (1st Cir.1993). In *Cruz–Santiago*, we held that the district court correctly "counted, as a robbery-related 'loss' for sentencing purposes, the value of a car . . ." pursuant to U.S.S.G. § 2B3.1(b)(6)(B), the then existing robbery provision. 12 F.3d at 1. *Cruz–Santiago*, however, is distinguishable. The defendants in *Cruz–Santiago* "entered a bank, took $6,160, shot the assistant manager, ran outside the bank, saw a [vehicle] . . . passing by, forced its innocent driver out of the car, and drove off to a rendezvous point." *Id.* They were charged with and convicted of bank robbery in the District of Puerto Rico. *Id.*

The case before us differs in important respects. First, Austin stole the vehicle at some time earlier than when he committed the bank robbery; thus, the two offenses are not a continuous event and are somewhat attenuated. More significantly, the robbery in *Cruz–Santiago* "involved carjacking," which is an aggravating factor under the robbery guideline. U.S.S.G. § 2B3.1(b)(5). In contrast, Austin's theft of the Jetta was not a "carjacking," nor did his bank robbery involve the car theft in the same contemporaneous manner. We conclude that *Cruz–Santiago* is distinguishable and does not control the case before us.

We are not persuaded that these separate events should be considered together for purposes of enhancing the loss due to the bank robbery. It is true that Austin stole the car earlier for the specific purpose of providing transportation in his nefarious scheme. He can be tried, convicted, and sentenced for car theft. But it is an entirely different question whether the value of that vehicle should be added to the bank cash stolen to assess the "loss" attributable to the bank robbery.

We hold that, because robbery is only secondarily about value, and because the value of the Jetta is the only hook upon which the district court hung the car theft to the robbery at sentencing, the one-level enhancement resulting from the aggregation of the value of the Jetta and the value of the money taken in the robbery pursuant to U.S.S.G. § 2B3.1(b)(7) was erroneous.

### B.

Austin further contends that the district court erred in grouping Counts One, Four, and Five. Section 3D1.2 of the Guidelines requires that "[a]ll counts involving substantially the same harm ... be grouped together into a single group" for purposes of calculating the offense level pertaining to a multiple-count conviction. U.S.S.G. § 3D1.2. Pursuant to U.S.S.G. § 3D1.3, the offense level for the entire Group is simply the highest offense level pertaining to any one of the Group's constituent offenses. When multiple counts fall outside of a single closely related Group, U.S.S.G. § 3D1.4 requires the imposition of a discounted enhancement based on the number and severity of the counts that fall outside the Group.

We need not address this issue because any error the district may have committed in grouping Counts One, Four, and Five pursuant to U.S.S.G. § 3D1.2 for the purpose of applying U.S.S.G. § 3D1.3 would necessarily be harmless. Austin's sentence was not altered by applying section 3D1.3 rather than section 3D1.4 to determine the combined offense level. Pursuant to section 3D1.3, the district court imposed a combined offense level of 28, the offense level pertaining to the robbery count, the highest offense level in the Group. Pursuant to section 3D1.4, the combined offense level imposed would still have been 28. This identical outcome persists even once the improper one-level enhancement pursuant to section 2B3.1(b)(7) is subtracted. Under either provision, Austin's combined offense level will be 27.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED FOR RE-SENTENCING.