Buthelezi v. Dept. of Corrections    CV-99-563-B    09/27/01
**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Themba H. A. Buthelezi

   v.                                           Civil No. 99-563-B
                                              Opinion No. 2001 DNH 178
Hillsborough County Department of Corrections, et al.


# O R D E R


     Before the court is pro se plaintiff Themba H. A. Buthelezi,

who has filed suit[1] against the Hillsborough County Department of

Corrections ("DOC") and a number of its employees pursuant to 42

U.S.C. § 1983 and 42 U.S.C. § 1981. Buthelezi seeks redress for

alleged violations of his Eighth and Fourteenth Amendment rights

caused by physical abuse, threats and other improper treatment

received during his incarceration at the Hillsborough County

House of Corrections ("HOC"). As Buthelezi is proceeding both

pro se and in forma pauperis, the matter is currently before me

for preliminary review. See United States District Court for the

District of New Hampshire Local Rules 4.3(d)(2). As explained

fully herein, I order the majority of Buthelezi's claims to be

---

[1]Buthelezi has filed a number of narrative documents. I
will consider them, in the aggregate, to be the complaint in this
matter.

served.[2]  In a Report and Recommendation issued simultaneously with this Order, I recommend the dismissal of the remaining claims and defendants from this action.

## Standard of Review

In reviewing a pro se complaint, the court is obliged to construe the pleading liberally.  See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of that party).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See

---

[2]Specifically, I order the following claims to be served against the following defendants: excessive force claims against Corrections Officers McCord, Martineau, Polotano, Sullivan, Kowack, Beaudoin, and Matte; Equal Protection claims against McCord, Martineau, Polotano, Kowack, and Beaudoin, improper strip search claims against Beaudoin and Provencal, destruction of property claim against Matte, improper disciplinary procedures claim against Sawyer, and an improper grievance procedure claim against Velasquez-Cunningham.

2

Eveland v. Director of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988). Dismissal of pro se, in forma pauperis complaints is appropriate if they are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i), (ii) & (iii).

Background

On July 22, 1999, Buthelezi, an INS[3] detainee, was in Housing Unit ("HU") 1-C at the HOC playing checkers when the door to the medical office burst open and corrections officers came charging into HU 1-C. Corrections Officer Polotano told Buthelezi to step into his cell but pointed to a cell on the lower tier rather than Buthelezi's cell on the upper tier. Buthelezi walked toward the stairs leading to his cell. At that time, for no apparent reason, Corrections Officers Timothy McCord and Polotano tackled Buthelezi, bringing him to the floor. Polotano and McCord pinned Buthelezi down with their knees, although he did not resist in any way, while Sgt. Sullivan was "jumping all over" another inmate who was handcuffed, shackled, and lying on the floor. Lt. Duffy came in and took charge of the

---

[3] "INS" is the Immigration and Naturalization Service.

other inmate while Sullivan approached Buthelezi with clenched fists and gritted teeth.  Sullivan ordered McCord and Polotano to pick Buthelezi up and throw him down again.  As a result, Buthelezi suffered numbness in both his legs and arms, a sprained shoulder, and his glasses were broken.

After Buthelezi was tackled to the floor, McCord and Polotano brought him from HU 1-C to HU 2-B[4].  While en route, McCord continuously attempted to trip Buthelezi, despite the fact that Buthelezi was both handcuffed at the wrists and shackled at the ankles.  During this transport, McCord also yelled continuously and directly into Buthelezi's right ear.

Upon arriving at HU 2-B, Buthelezi was brought into cell 2104 and told to strip naked.  Sargeant John Kowack told Buthelezi he would have to remain nude in his cell due to "policy."  Buthelezi refused to do this as he believed it to be cruel and unusual punishment.  He was then handcuffed and shackled again and moved to cell 2098 where he was told to stand in the corner of the cell without talking or moving.  When he did not comply with this instruction, as he thought it was

---

[4]HU 2-B is a maximum security unit.

ridiculous, he was thrown on the floor and barraged with a series of ethnic slurs by the corrections officers present.

An officer added a set of flexible plastic handcuffs to the handcuffs already on Buthelezi's wrists and tightened both sets of handcuffs and his shackles.  His hands and arms went immediately numb and his skin was broken by all three sets of restraints due to their excessive tightness.  When he complained about the tightness of the restraints, he was told that they were intended to be painful and he was called names.  While lying on the floor thus restrained Sargeant Brian Martineau kicked him three times, once on each thigh and once in the rib cage.  Two corrections officers also observed Martineau choke Buthelezi.  The corrections officers who were present then proceeded to verbally abuse him.

Buthelezi was then dragged in restraints to cell 2099 where he was strapped to a restraining chair and made to endure more physical and verbal abuse.  He was kicked above his knee and threatened with additional abuse.  Corrections Officer Steve Beaudoin, in an apparent attempt to hit a pressure point, rubbed his knuckle into Buthelezi's head behind his ear until Buthelezi was bleeding.

5

While in the restraining chair, Buthelezi's arms and legs were restrained. Martineau choked him for at least two minutes until he was falling in and out of consciousness. Martineau also threatened to kill Buthelezi and make it look like a suicide. Buthelezi felt that this was not an idle threat, that Martineau had possibly done such a thing before, and that Martineau had the present ability to do it. Buthelezi reports that Martineau was so excited and aggressive that he was actually foaming at the mouth. None of the corrections officers present made any attempt to restrain or calm Martineau. Two supervising corrections officers were present and observed Martineau kick the plaintiff. Kowack and Sullivan were also present.

As a result of the events on July 22, 1999, Officers Sykes, McCord, Beaudoin, Kowack and Martineau filed disciplinary reports against Buthelezi. Buthelezi alleges that at his disciplinary hearing, Disciplinary Hearing Officer Anthony Sawyer refused to take a written statement in evidence. After the hearing was resolved against him, Sawyer refused to accept Buthelezi's written appeal.

Buthelezi attempted to file a criminal complaint with the Manchester Police Department. On July 30, 1999, he was

6

interviewed by Manchester Police Officer Connerra. Connerra was reluctant to process any criminal complaint against the officers involved and ended the interview apparently concluding that Buthelezi wanted to file a civil action. Buthelezi's criminal complaint was never prosecuted. Buthelezi did attempt to follow up on the criminal case, but was told he would have to contact the Manchester Police Department. He requested, but was not provided with, an address or phone number for the Manchester Police Department. Buthelezi charges that two corrections officers, Sullivan and Robbins, participated in preventing him from pursuing his complaint with the Manchester Police Department.

On November 12, 1999, Buthelezi filed an internal grievance at the HOC. The investigating corrections officer, Sgt. Scott Velasquez-Cunningham, Buthelezi charges, did not adequately investigate his complaint, as he failed to either record a fair account of the incident or afford Buthelezi the opportunity to do so.

On November 19, 1999, while Buthelezi was housed in HU 2-B, Corrections Officer Paul Matte announced that all of the inmates on that unit would lose their out-of-cell recreation time on the

following day because of noise on the unit. Buthelezi, feeling the response was excessive to the infraction, requested that the unit be given a second chance. Matte, construing this request as insolent and disrespectful, became irate and began swearing. He retrieved keys from another officer and went into Buthelezi's cell. He began to push Buthelezi around and yell in his face. He then knocked all of plaintiff's possessions off a desk in the cell, including books and legal paperwork, some of which went into the toilet or out the cell door. Matte then discarded anything that went out the cell door.

The last incident giving rise to plaintiff's complaint occurred when Beaudoin, along with Corrections Officer Trainee Provencal, went into plaintiff's cell to conduct a strip search. After the strip search, Beaudoin instructed Buthelezi to take his clothing outside of the cell and get dressed there. Buthelezi thought this was an absurd request and began to dress in his cell, in part because there were female training officers in the HU. Beaudoin proceeded to verbally abuse Buthelezi. Two disciplinary reports were filed against Buthelezi for this incident. Buthelezi alleges they were retaliation for his prior complaints against the officers, including Beaudoin.

8

                              Discussion

     Buthelezi alleges that he was subjected to physical abuse

and excessive force, verbal abuse including threats, insults and

ethnic slurs, the denial of various privileges and subjection to

inappropriate punishment, and a failure of the police to

prosecute or the HOC to fairly address his grievances, all in

violation of his rights under the Eighth and Fourteenth

Amendments.[5]  He also alleges that he was subjected to a

conspiracy between the defendants to violate his constitutional

rights and that he was subjected to discrimination based on his

national origin in violation of his right to equal protection.

Claims Regarding Physical Abuse

_____

     [5]As an INS detainee, Buthelezi's challenges to the
conditions of his detention arise under the Fourteenth Amendment.
See, e.g., Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988) (per
curiam) (rejecting an Eighth Amendment challenge to pretrial
detention).  Detainees have a constitutional right under the due
process clause of the Fourteenth Amendment to be free of
punishment.  See O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir.
1997), cert. denied, 522 U.S. 1047 (1998).  However, challenged
conditions or restrictions which can be rationally related to
some legitimate administrative goal or security concern generally
will not be deemed unconstitutional "punishment." Id.  Because
the Due Process Clause prohibits the infliction of punishment on
a person prior to a judgment of conviction, the issue is
ultimately whether the conditions of confinement were reasonably
related to a legitimate state interest or were intended instead
as punishment.  See Collazo-Leon v. United States Bureau of
Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

                                 9

As a detainee, Buthelezi is protected by the Due Process Clause of the Fourteenth Amendment from "the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Garcia v. City of Boston, 115 F.Supp.2d 74, 81 (D.Mass. 2000). In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, the court should look to the following four factors: (1) "the need for application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," and (4) "whether the force was applied in good faith to maintain or restore discipline or maliciously and sadistically for the very purpose of inflicting harm." Garcia, 115 F.Supp.2d at 81.

Applying these factors in the case, and assuming, as I must, that the facts stated in the complaint are true, I find that plaintiff has clearly alleged facts sufficient to support a finding that the use of force by several corrections officers was unconstitutionally excessive. First, Buthelezi has alleged that in the July 22, 1999 incident, corrections officers Polotano, Martineau, McCord, Sullivan, Kowack, and Beaudoin used significant physical force against him, including kicking, overtightening of restraints, kneeling on the plaintiff and other

10

physically abusive acts[6]. According to the complaint, none of this force was required as Buthelezi, at no time, engaged in any sort of threatening or dangerous behavior, resistance or disruption. Second, as no force was necessary, the use of such force was clearly out of proportion to any need. Third, although Buthelezi does not allege that he suffered significant injury, the fact that he was injured at all by the actions of the officers indicates further that the use of force was excessive. Fourth, Buthelezi has demonstrated that the officers in question acted in bad faith as he was physically abused while being completely restrained, non-resistant and lying on the floor. Further, Buthelezi alleges that the officers told him that their purpose was to cause him pain. I find, therefore, that Buthelezi has sufficiently alleged a Fourteenth Amendment claim for excessive force against Polotano, Sullivan, McCord, Martineau,

---

[6]To the extent that any of the officers observed, rather than committed an act of physical force, I find that those officers failed to restrain the officers who did use force and that those officers violated their duty to intervene and protect Buthelezi, a detainee, from such an assault. See Davis v. Rennie, No. 99-1453, slip op. at 17 (1st Cir. Sept. 5, 2001) (adopting as its holding dicta in Gaudreault v. Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (per curiam), cert. denied, 500 U.S. 956 (1991) which states that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.").

11

Beaudoin, and Kowack and order that claim to be served on these defendants.

Buthelezi further alleges physical abuse by Corrections Officer Matte on November 19, 1999. He alleges that Matte, in a fit of anger which was disproportionate to the verbal disagreement which preceded it, pushed Buthelezi around in his cell. Applying the same analysis to this incident, I find that for the purposes of this review, Buthelezi has stated a claim against Matte because, in a situation where force was not necessary, it was utilized. Therefore, although there was no injury sustained and no indication of bad faith, maliciousness or sadism, the fact that force was applied when none was necessary allows this claim to proceed at this time against Matte.

Claims Regarding Verbal Abuse, Ethnic Slurs, and Equal Protection

Buthelezi alleges that he was verbally abused, insulted, threatened and subjected to ethnic slurs by the corrections officers involved in the July 22, 1999 incident. Although verbal abuse generally does not invoke constitutional protection, see Shabazz v. Cole, 69 F.Supp.2d 177, 198-201 (D.Mass. 1999) (citing authority to explain that racial slurs and verbal threats do not violate a prisoner's constitutional rights), generously

12

construing Buthelezi's allegations it appears that he may be attempting to state a claim under the Equal Protection Clause.

Prisoners are protected against invidious discrimination by the Equal Protection Clause of the Fourteenth Amendment.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The Equal Protection Clause allows courts to scrutinize a classification based on national origin to determine whether or not the classification violates constitutional rights.  See United States v. Virginia, 518 U.S. 515, 567 (1996).  To state such a claim, "the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone."  Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998); see also Correa-Martinez v. Arillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990) (requiring that alleged facts in complaint "specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful.").

In his description of the July 22, 1999 incident, Buthelezi alleges that the various officers involved were "throwing slurs at" him, including "Fuckin' Immigrant," "Go back to your

13

country," and "You are a piece of shit, that is why your country does not want you" among others. Buthelezi ascribes particular statements to Martineau and Kowack as well as a general allegation that the comments were made by the officers present.[7] Further, Buthelezi describes witnessing physical and verbal assaults similar to the one he was subjected to against at least five other INS detainees. These facts sufficiently allege that the officers in question "intentionally subjected him to discrimination." Judge, 160 F.3d at 75. I find, therefore, that Buthelezi has failed to state any constitutional claim for general verbal abuse, but has stated an Equal Protection claim against Martineau, Kowack, McCord, Polotano, and Beaudoin for discriminatory verbal abuse based on ethnic origin.

Strip Search Claim

Although Buthelezi's complaint does not identify precisely what claim he seeks to pursue surrounding the strip search incident, liberally construing the complaint, I find that he is challenging the legality of the strip search, and, in particular, being made to remain nude in a public place. A challenge to the

---

[7]Buthelezi, however, specifically states that Sullivan did not articulate any ethnic slurs, but merely grunted.

legality of a search arises under the Fourth Amendment's protection against unreasonable searches and seizures.

Pretrial detainees retain constitutional rights during their incarceration, including their Fourth Amendment right against unreasonable searches and seizures. Bell v. Wolfish, 441 U.S. 520, 545 (1979). "However, those rights may be subject to restrictions based on the fact of confinement, the legitimate goals and policies of the penal institution, and the need of the institution to maintain security and internal order." Roberts v. Rhode Island, 239 F.3d 107, 110 (1st Cir. 2001); Bell, 442 U.S. at 545-46. "'When an institutional restriction infringes a specific constitutional guarantee,'--here, the Fourth Amendment right against unreasonable searches,--'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" Roberts, 239 F.3d at 110; quoting Bell, 442 U.S. at 546. In Bell, the Court instructed courts examining prison strip searches to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. This Circuit has held that in the context of prisoners held in local

15

jails for minor offenses, "the Bell balance requires officers to have a reasonable suspicion that a particular detainee harbors contraband prior to conducting a strip or visual body cavity search." Roberts, 239 F.3d at 110, citing Swain v. Spinney, 117 F.3d 1, 5 (1st Cir. 1997).

Applying the Bell balancing factors in the present case, I find that the strip search conducted by officers Beaudoin and Provencal, because it required Buthelezi to entirely undress, was a significant intrusion worthy of scrutiny. Moreover, the manner in which it was conducted was, according to the complaint, brusque. Furthermore, there does not appear in the complaint any evidence of a justification for initiating the search beyond a general institutional interest in security that can be presumed. Rather, the complaint suggests that the true motive for this particular search was to train Officer Provencal and not the result of any particularized suspicion that Buthelezi was harboring some contraband on his person or in his clothing. Finally, and perhaps most troubling in this case, is that the search was to be conducted in a relatively "public" place as Buthelezi was required to leave his cell naked and put on his clothing there. The fact that Buthelezi refused to do so,

16

although it might diminish damage to Buthelezi in this case, does not erase the unreasonableness of the request, or the taint that the request places on the reasonableness of the search.

I find that Buthelezi's complaint sufficiently demonstrates that the strip search conducted in this case was unreasonable, as it was not apparently based on a particularized suspicion that Buthelezi was in possession of contraband. Also, there is no indication that Buthelezi has committed a serious offense, or any offense for that matter, as he is an INS detainee who does not appear to be currently charged with a crime. There appears to be no reason to assume, therefore, that Buthelezi was at any risk for acquiring contraband from other inmates. The search does not appear to be tied to any contact with anyone outside the jail. There do not appear to be aggravating factors which might tip the scale in favor of a governmental interest in this search. See Roberts, 239 F.3d at 111-12 (discussing factors which mitigate against the reasonableness of strip searches, including apparent dangerousness of inmate and the minor nature of the committing offense). I find, therefore, that Buthelezi has successfully stated a claim upon which relief might be granted against corrections officers Beaudoin and Provencal for a violation of

17

his Fourth Amendment right to be free from unreasonable searches by virtue of the unreasonable strip search described in his complaint.

Claim Regarding Treatment of Plaintiff's Property

Here again, the precise nature of the claim attempted is not made clear in the complaint. However, affording liberal construction it can be inferred that Buthelezi is attempting to make claims that he was denied access to the courts because he was both deprived of his legal paperwork and deprived of his property by a state actor without due process when Matte intentionally destroyed or discarded his belongings.

The taking of legal property by a corrections officer, resulting in denial of access to the courts is actionable as a violation of the plaintiff's constitutional right of access to the courts. Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986). In this case, to survive dismissal at a later stage of the proceedings, Buthelezi will have to fill in the particulars of this claim to identify the legal proceeding which was interfered with by Matte's taking of his property. However, for purposes of preliminary review, I find that Buthelezi has stated

18

a claim upon which relief might be granted and order that this claim be served on Officer Matte.

Claims Regarding Inappropriate Disciplinary Procedures

Buthelezi also complains he was subjected to disciplinary procedures without adequate due process because he was the subject of undeserved retaliatory disciplinary reports and because he was denied the right to submit evidence and to appeal findings of disciplinary infractions. In effect, all of these complaints amount to an allegation that Buthelezi was subjected to disciplinary procedures that were intended to punish him for his pursuit of redress for the abuse committed against him by corrections officers.

Although, as stated above, pretrial detainees are not generally subject to being punished in jail, see Bell, 441 U.S. at 536, the jail may "impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention" and "that maintain security and order in the detention facility." O'Connor v. Huard, 117 F.3d 12, 16 (1st Cir. 1997). For the court to decide is "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Bell, 441 U.S. at

19

538. A jail may thus discipline a detainee who violates the facilities regulations. Discipline for the purpose of punishing an inmate in retaliation for non-rulebreaking conduct, however, is impermissible and violates the due process rights of the inmate. As Buthelezi's claim can be clearly construed to allege such a deprivation, I find that he has stated this claim against Corrections Officer Anthony Sawyer, the disciplinary hearings officer who refused to allow certain evidence to be filed on Buthelezi's behalf or to permit Buthelezi to file an appeal of the findings of his disciplinary hearing.

Claim Regarding Failure to Prosecute Internal Grievance

Buthelezi claims that he attempted to file a grievance but was thwarted in this attempt by Sgt. Velasquez-Cunningham, who refused to record certain information, objectively investigate Buthelezi's complaint, or properly prosecute the grievance. This complaint is a claim that his right to petition the government for redress of grievances was infringed by the acts and omissions of Velasquez-Cunningham.

The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine

Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967). The right of petition, in the prison context, means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers." Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (in banc), cert. denied, 404 U.S. 1049 (1972). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that . . . section 1983 [is] intended to remedy." Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988) (internal quotations omitted).

Because Buthelezi has set forth facts that, for purposes of this review, are sufficient to allege that he has been obstructed in his attempt to petition the government for grievances, I find that he has stated a claim against Velasquez-Cunningham and order the claim to be served.

Claim Regarding Failure to Prosecute Criminally

As for his claim that Manchester Police Officer Cannerra declined to prosecute Buthelezi's criminal complaint against the abusive corrections officers, it is unclear under what theory suit was intended. If Buthelezi is challenging the failure to

21

prosecute, the complaint might have attempted to name the prosecutor rather than the police officer.[8]  To the extent that Buthelezi alleges a conspiracy between the Manchester Police Officer and the corrections officers, I find that he has failed to allege sufficient facts to support a claim of conspiracy.  In order to state such a claim "the plaintiff must plead conspiracy in some detail and provide some factual basis supporting the existence of a conspiracy."  Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 381 (C.D. Ill. 1993).  "Mere conjecture that there has been a conspiracy is not enough to state a claim."  Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1206-07 (7th Cir. 1980).  The only facts Buthelezi offers to support a theory of conspiracy between Connerra and the corrections officers include a conversation where Connerra opined that Buthelezi wanted to sue the jail and questioned the advisability of criminal charges against the DOC, and Connerra's subsequent failure to prosecute.

---

[8]Such a claim, of course, would have failed, as a prosecutor has absolute immunity from suit for a decision as to whether or not to initiate a criminal prosecution.  See Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Harrington v. Almy, 977 F.2d 37, 40 (1992) ("The decision whether or not to charge is at the core of the prosecutorial functions the courts have sought to insulate from second guessing through civil litigation.").

22

These facts do not amount to much more than conjecture and will not sustain this claim.

Theories of Liability

    1.   Individual Capacity Suits

42 U.S.C. § 1983 authorizes suits against state actors operating to deprive citizens of their constitutional rights.[9] Because I have found that Buthelezi has alleged constitutional violations against various corrections employees sufficient to state a cause of action under § 1983, those corrections officers will be defendants in this suit in their individual capacities.

    2.   Municipal Liability

Municipalities and local government entities are "persons" within the meaning of § 1983. See Monell v. Dept. of Social Services, 453 U.S. 658, 690 (1978). Under New Hampshire law, counties, such as Hillsborough County, are considered local

---

[9]The statute provides in relevant part:

> Every person who, under color of any [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to that party injured in any action at law, . . .

42 U.S.C. § 1983 (Supp. 1997).

governmental units.  See N.H. Rev. Stat. Ann. ("RSA") 507-B:1

(1997) (defining "governmental unit" as "any political

subdivision within the state including any county, city,

town . . ., but [not including] the state or any department or

agency thereof."); see also RSA 23:1 (1988) (providing that "each

county is a body corporate for the purpose of being sued. . .").

In order to maintain a claim against the DOC as a municipality

under 42 U.S.C. § 1983, however, the claim must be grounded upon

an unconstitutional municipal custom or practice and two

requirements must be met.  "First, the custom or practice must be

attributable to the municipality, i.e., it must be 'so well

settled and widespread that the policymaking officials of the

municipality can be said to have either actual or constructive

knowledge of it yet did nothing to end the practice.'" Miller v.

Kennebunc County, 219 F.3d 8, 12 (1st Cir. 2000) (quoting Bordano

v. Mcleod, 871 F.2d 1151, 1156 (1st Cir 1989)).  Second, the

custom must have been the cause of and "the moving force" behind

the deprivation of constitutional rights.  Id. at 1157.  Because

he has failed to show that Hillsborough County engaged in a

custom or policy of allowing or enabling unconstitutional

treatment of prisoners, Buthelezi fails to state a § 1983 claim against the DOC.

3.    Supervisory Liability

Buthelezi has named the Prison as a defendant in his suit. I will assume that he intended to name the Prison's administrators as defendants in their supervisory role as he lists no particular offense against the administration. "Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998). A supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. at 44. Here, Buthelezi alleges that there were supervising officers, including Sullivan and Martineau, involved in or observing some of the abuses against him. He has named those officers and sued them in their individual capacities and I have discussed them in the body of this Order. To the extent that these officers were alleged to be acting in their

25

supervisory capacity, he has stated a claim sufficient to render them so liable, as it is clear from the complaint that the supervisors' presence and support at the scene of the abuse constituted both primary participation in as well as condonation of the abuses.

<u>Conclusion</u>

Without commenting further on the merits of the complaint, I find that Buthelezi has stated claims upon which relief may be granted. Accordingly, I order that the complaint be served on Corrections Officer Timothy McCord, Sgt. Brian Martineau, Corrections Officer Polotano, Sgt. Sullivan, Corrections Officer John Kowack, Corrections Officer Steve Beaudoin, Corrections Officer Paul Matte, Corrections Officer Trainee Provencal, Disciplinary Hearing Officer Anthony Sawyer and Corrections Officer Scott Velasquez-Cunningham.

My review of the file indicates that Buthelezi has neglected to prepare summons forms for the defendants in this action. Buthelezi is ordered to prepare summons forms for each of the defendants he wishes to sue and return them to the Clerk's office within thirty days of the date of this Order. Failure to do so

will result in a recommendation of dismissal of this action against any defendants for whom summons forms are not completed.

The Clerk's office is directed to issue the necessary summons forms and forward to the United States Marshal for the District of New Hampshire (the "U.S. Marshal's office") the summonses and copies of the complaint (document no. 1), the Report and Recommendation issued this date, and this Order. Upon receipt of the necessary documentation, the U.S. Marshal's office shall effect service upon McCord, Martineau, Polotano, Sullivan, Kowack, Beaudoin, Matte, Provencal, Sawyer, and Velasquez-Cunningham. See Fed. R. Civ. P. 4(c)(2).

McCord, Martineau, Polotano, Sullivan, Kowack, Beaudoin, Matte, Provencal, Sawyer, and Velasquez-Cunningham are instructed to answer or otherwise plead within twenty days of service. See Fed. R. Civ. P. 12(a)(1)(A).

Buthelezi is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on

27

each of the defendants by delivering or mailing the materials to them or their attorney(s), pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:     September 27, 2001

cc:       Themba H. A. Buthelezi, <u>pro</u> <u>se</u>

28